IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LAFTON RANDLE, JR.,                        )
                                           )
            Petitioner,                    )
                                           )
v.                                         )    Case No. CIV-05-195-M
                                           )
RON WARD and THE ATTORNEY                  )
GENERAL OF THE STATE OF                    )
OKLAHOMA,[1]                               )
                                           )
            Respondents.                   )

## REPORT AND RECOMMENDATION

Mr. Lafton Randle, Jr., a state inmate, seeks a writ of habeas corpus and a stay

pending exhaustion of state court remedies.  The Court should deny the Petitioner's motions

for a stay and for habeas relief.

## Background

In state court, Mr. Randle was convicted of first degree arson.  *See* Petition at pp. 1-2;

Brief of Appellant at pp. 1-2, *Randle v. State of Oklahoma*, Case No. F-2003-168 (Okla.

Crim. App. Sept. 10, 2003) ("Mr. Randle's Direct Appeal Brief").  The Petitioner appealed

---

[1]      In the petition, Mr. Lafton Randle, Jr. included the state attorney general as a respondent.
Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody at
p. 1 (Feb. 16, 2005) ("Petition").  Thus, the Court stated that the Attorney General was a party and
had to respond to the petition along with Respondent Ron Ward.  Order for Response by Oklahoma
Attorney General to Petition for Writ of Habeas Corpus at p. 1 n.1 (Mar. 16, 2005).  The state
attorney general defied the order, declining to respond to the habeas petition and insisting that he "is
not a party."  Response to Petition for Writ of Habeas Corpus at p. 1 n.1 (Apr. 14, 2005); Response
to Petitioner's Motion for Indefinite Stay at p. 1 (May 6, 2005).  The Attorney General's refusal to
comply with the order is inexplicable.  He can request to be dropped as a party, but cannot
unilaterally change the parties.  *See* Fed. R. Civ. P. 21.

the conviction and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed. Summary

Opinion, at p. 2, *Randle v. State of Oklahoma*, Case No. F-2003-168 (Okla. Crim. App. Jan.

6, 2004) ("OCCA Opinion on Direct Appeal"). The present action followed, with the

Petitioner alleging: (1) improper use of a peremptory challenge on the basis of race, (2)

ineffective assistance of trial counsel, and (3) prosecutorial misconduct. Petition at pp. 6, 8,

10.

### The Petitioner's Motion to Stay the Federal Habeas Proceedings

After filing his habeas petition, Mr. Randle sought post-conviction relief in state court,

alleging improper application of a state sentencing statute. Application for Post-Conviction

Relief - Brief in Support at pp. 5-9, *Randle v. Ward*, Case No. CF-2002-38 (Blaine Co. Dist.

Ct. Apr. 5, 2005). Because the claim is unexhausted, Mr. Randle seeks to stay the present

action so that he can pursue state court remedies on the sentencing issue and amend the

habeas petition if he does not otherwise obtain relief. *Id.* at p. 2. The Court should overrule

the Petitioner's request for a stay.

In certain circumstances, the Court can stay habeas proceedings to allow the petitioner

to exhaust claims. *See Rhines v. Weber*, __ U.S. __, 125 S. Ct. 1528 (2005). But a stay for

this purpose is impermissible when the unexhausted habeas claim is "plainly meritless." *Id.*,

125 S. Ct. at 1535.

The Petitioner states that he was improperly sentenced under the 2001 version of

Okla. Stat. tit. 21 § 51.1(B) and that a more lenient provision - Okla. Stat. tit. 21 § 51.1(C) -

took effect only seven days after the commission of his crime. Application for Post-Conviction Relief - Brief in Support at pp. 5-9, *Randle v. Ward*, Case No. CF-2002-38 (Blaine Co. Dist. Ct. Apr. 5, 2005). According to Mr. Randle, the new sentencing provision should have been applied retroactively. *Id.* This theory is plainly invalid for three reasons: (1) Oklahoma law never changed with respect to the minimum sentence for Mr. Randle; (2) the alleged statutory changes would not be retroactively applied under Oklahoma law; and (3) the alleged sentencing error would not support federal habeas relief.

First, Mr. Randle's theory is based on a mistake about the history of Okla. Stat. tit. 21 § 51.1. Beginning on July 1, 2001, the section contained two subparts, "B" and "C". Subsection "B" governed when a person: (1) was convicted of an offense listed in Okla. Stat. tit. 57 § 571, and (2) had two prior felony convictions within ten years of the completion of his sentence. Okla. Stat. tit. 21 § 51.1(B) (2001). For these individuals, the minimum sentence was twenty years. *See id.* Under Subsection "C", the minimum sentence was four years when the conviction involved an offense that was not listed in Okla. Stat. tit. 57 § 571. Okla. Stat. tit. 21 § 51.1(C) (2001). On June 5, 2002, the statute changed, but the amendment did not affect Subsection "B" or "C". 2002 Okla. Sess. Laws ch. 455 § 1. Since 2001, first degree arson has been listed in Okla. Stat. tit. 57 § 571(2)(hh) (2001). Thus, at the time of Mr. Randle's offense and afterward, the minimum sentence was twenty years under Subsection "B".

Second, under Oklahoma law, sentencing is based on the law in effect when a crime is committed. *See Williams v. State of Oklahoma*, 59 P.3d 518, 519 (Okla. Crim. App. 2002) (because "there [was] no express indication that the Legislature intended the [2001 amendment of Okla. Stat. tit. 21 § 51.1(C)] to be applied retroactively," the defendant "was entitled only to an application of the law which was in effect at the time he committed the crime" (citations omitted)). Thus, when the legislature reduces the minimum sentence after the commission of a crime, the reduction does not retroactively apply. *See id.* (concluding that the defendant was "not entitled to the benefit of [Okla. Stat. tit. 21 § 51.1(C) (2001)] as the 2001 amendment does not apply retroactively to [his] case" (citations omitted)).

Third, misapplication of Okla. Stat. tit. 21 § 51.1 by an Oklahoma court would not entitle the wrongfully sentenced individual to federal habeas relief. *See Dockins v. Hines*, 374 F.3d 935, 940 (10th Cir. 2004) (holding that Oklahoma's refusal to apply "lighter state sentencing rules" does not justify habeas relief because violations of state law are insufficient for such a remedy and retroactive application of subsequently enacted sentencing rules is not constitutionally required).

For these reasons, the Petitioner's unexhausted theory is plainly meritless, and the Court should decline the request for a stay.

### The Petitioner's Existing Habeas Claims

As stated above, the Petitioner has filed a petition for habeas relief, alleging: (1) improper use of a peremptory challenge on the basis of race, (2) ineffective assistance of trial

4

counsel, and (3) prosecutorial misconduct. *See supra* p. 2. These grounds do not support habeas relief.

I.    Standard for Habeas Review

This Court has a "secondary and limited" role in the review of state court rulings through a petition for habeas relief. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citations omitted).

For example, a state court's determination of a factual issue triggers a narrow standard of review. First, the finding is presumptively correct, requiring the challenging party to respond with clear and convincing evidence. *See* Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(e)(1) (2000). Second, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(2) (2000).

Habeas relief is otherwise unavailable unless the state court's ruling had "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) (2000). A state court decision may be "contrary to" clearly established precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially

5

indistinguishable facts." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004), *petition for cert. filed* (U.S. Mar. 14, 2005) (No. 04-9270). Application of Supreme Court case law is unreasonable if the state court identifies the correct Supreme Court precedent, but unreasonably applies the law to the facts. *See id.*

II.   Improper Peremptory Challenge

Mr. Randle contends that the prosecutor had improperly used a peremptory challenge to excuse an African-American female in the venire, violating *Batson v. Kentucky*, 476 U.S. 79 (1986).[2] Petition at p. 10. Rejecting this claim on direct appeal, the OCCA held that the prosecutor had excused the prospective juror for valid, race-neutral reasons. OCCA Opinion on Direct Appeal at p. 2. The OCCA's conclusion was reasonable and consistent with Supreme Court precedent.

In *Batson v. Kentucky*, the Supreme Court prohibited government use of peremptory challenges to remove members of a venire based on race. *Batson v. Kentucky*, 476 U.S. at 96-98. To prevail under *Batson*, a petitioner must satisfy a three-part test. Initially the petitioner must make a *prima facie* showing that the prosecutor had exercised a challenge based on the prospective juror's race. *See Hernandez v. New York*, 500 U.S. 352, 358 (1991). If the petitioner makes this showing, the prosecutor must articulate a race-neutral explanation to strike the venireperson in question. *See id.* at 358-59. If the prosecutor articulates a race-neutral explanation, the trial court must decide whether purposeful

---

[2]   In *Powers v. Ohio*, 499 U.S. 400, 405-406 (1991), the Supreme Court modified *Batson* on grounds that are immaterial here.

discrimination had occurred. *See id.* at 359. For this inquiry, the burden of persuasion lies

with the petitioner. *See Hidalgo v. Fagen, Inc.*, 206 F.3d 1013, 1019 (10th Cir. 2000) ("The

party bringing the *Batson* challenge always carries the ultimate burden of persuasion.").

The trial judge conducted a hearing and allowed the peremptory challenge. I Trial

Transcript at pp. 59-60, 88 (Jan. 6-7, 2003) ("Tr."). The OCCA upheld this ruling, stating

that the peremptory challenge had been made "for valid, race-neutral reasons." OCCA

Opinion on Direct Appeal at p. 2 (footnote omitted). The state court's rulings involve "a

question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)." *Sallahdin*

*v. Gibson*, 275 F.3d 1211, 1225 (10th Cir. 2002) (citation omitted); *see supra* p. 5. In

applying this standard, the federal district court must "presume the state court findings are

correct unless they are rebutted by clear and convincing evidence." *Sallahdin v. Gibson*, 275

F.3d at 1225; *see Saiz v. Ortiz*, 392 F.3d 1166, 1180 (10th Cir. 2004) (stating that on review

of a habeas petitioner's *Batson* claim, the state trial court's factual findings are presumed

correct), *petition for cert. filed* (U.S. May 3, 2005) (No. 04-9984); *see also supra* p. 5.

Under the first prong of *Batson*, the petitioner must make a *prima facie* showing that

the peremptory challenge was racially motivated. *See supra* p. 6. The Court may assume

*arguendo* that this showing was made.

Under the second prong of *Batson*, the prosecutor must offer race-neutral reasons for

the peremptory challenge. *See supra* p. 6. During *voir dire*, an African-American

veniremember stated that: (1) she had prior criminal charges; (2) her husband had previously

7

been convicted; (3) she was acquainted with Mr. Randle, his father and grandmother, and one of the prosecutor's witnesses; and (4) she had read about the case in the newspaper.  Tr. at pp. 9-11, 13-14, 34-36.  The prosecutor cited this testimony when offering race-neutral reasons for the challenge.  *Id.* at pp. 58-59.  In response, Mr. Randle's attorney did not object, stating that he believed that the prosecutor's reasons were race-neutral.  *Id.* at p. 59.

Mr. Randle's only evidence of racial motivation for the challenge is that both he and the veniremember are African-American.  *See* Petition at p. 10.  But the prosecution offered racially neutral explanations for the challenge.

First, the venireperson testified that her husband had previously been convicted of assault and battery on a police officer and had been incarcerated for that offense.  Tr. at pp. 35-36; *see supra* pp. 7-8; *see also United States v. Johnson*, 941 F.2d 1102, 1109 (10th Cir. 1991) (rejecting a *Batson* claim based on a peremptory challenge involving a prospective juror whose brother had once been convicted of a crime and "the prosecutor felt [the prospective juror's] family history would bias [her] against the Government's criminal case").

Second, the veniremember had previously been convicted of drug charges and had served a deferred sentence.  Tr. at pp. 34-35; *see supra* pp. 7-8; *see also Reynolds v. Benefield*, 931 F.2d 506, 511-12 (8th Cir. 1991) (rejecting a *Batson* claim in part based on the prosecutor's belief that the prospective juror had previously been arrested, creating the

8

possibility of "resentment or hostility against those defendants who were members" of the same police department).

Third, the veniremember stated that she had read about the case and knew Mr. Randle, his family, and one of the State's witnesses. Tr. at pp. 9-11, 13-14; *see supra* pp. 7-8; *see also United States v. Williamson*, 53 F.3d 1500, 1509 (10th Cir. 1995) (rejecting a *Batson* claim in part because the State had proffered race-neutral reasons for the challenge, which involved the veniremember's acquaintance with a witness, familiarity with the subject-matter of the trial, and recollection of a five-minute meeting with the defendant twenty years earlier).

Because the prosecutor provided race-neutral explanations for the peremptory challenge, the third prong of *Batson* is dispositive. *See supra* pp. 6-7. Under this portion of the test, the trial judge had to determine whether the Petitioner had established purposeful discrimination. The judge accepted the race-neutral explanations offered by the prosecutor and allowed him to strike the venireperson. Tr. at p. 140. The OCCA reached a similar conclusion, concluding that "the prosecutor [had] excused Juror Burton for valid, race-neutral reasons." OCCA Opinion on Direct Appeal at p. 2. The presumption of correctness requires deference to the OCCA's findings concerning the State's explanations for its challenges, and the Petitioner has not presented "clear and convincing" evidence to the contrary. *See supra* pp. 5, 7. Thus, the Court should reject Mr. Randle's claim involving racial motivation for the peremptory challenge to excuse an African-American

9

veniremember. *See Sallahdin v. Gibson*, 275 F.3d 1211, 1226 (10th Cir. 2002) (rejecting a habeas claim involving discrimination in a peremptory challenge because the petitioner had "not rebutted the trial court's finding [under *Batson*] by clear and convincing evidence").

III.   Ineffective Assistance of Trial Counsel

Mr. Randle alleges that his trial counsel, Mr. Mark Hixson, had provided ineffective assistance through a lack of communication and a failure to interview individuals, subpoena defense witnesses, or object to a discriminatory peremptory challenge. Petition at pp. 6, 10.

A.   The Petitioner's Burden to Show Ineffective Assistance

For a claim involving ineffective assistance of counsel, the Petitioner must show that trial counsel's performance was constitutionally deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if the representation falls below an objective standard of reasonableness. *See id.* at 690-91. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

B.   Ineffective Assistance Based on a Lack of Communication or Failure to Interview or Subpoena Witnesses

Mr. Randle alleges a lack of communication with counsel and a failure to interview or subpoena witnesses. Petition at p. 6. The Petitioner raised this claim on direct appeal and the OCCA concluded that Mr. Hixson was not ineffective. OCCA Opinion on Direct Appeal at p. 2. This determination was not contrary to, or an unreasonable application of, Supreme Court precedent.

In the habeas petition, Mr. Randle does not explain his allegations. But on direct appeal, the Petitioner referred to a discussion in *voir dire* where he had requested a continuance. Mr. Randle's Direct Appeal Brief at p. 4.

In the cited excerpt, Mr. Randle stated that he and his attorney had not discussed the case. Tr. at p. 61. Upon further inquiry, Mr. Randle stated that he had spoken to his attorney about witnesses to be subpoenaed, but had not identified a particular witness. *Id.* The court then asked Mr. Randle: "Was there any particular person you think might have knowledge of the facts that should be testifying?" *Id.* at pp. 61-62. After conferring with his client, Mr. Hixson said that the prosecutor would present a witness regarding the lack of burns on Mr. Randle's legs. *Id.* at pp. 62-63. Mr. Randle again requested a continuance because he had not known earlier about the State's witness. *Id.* at p. 63. When asked again whether the Petitioner had any other pending matters, Mr. Randle stated that he was "concerned about that witness that [Mr. Hixson] just now brought up." *Id.* at p. 64. The court concluded that Mr. Randle had not justified a continuance and overruled the request. *Id.*

In his habeas petition, Mr. Randle states that his attorney had failed to interview or subpoena witnesses who "would help establish his actual innocent [sic] of this alleged offense." Petition at p. 6. But at trial and on appeal, the Petitioner had not identified a witness who could have established his innocence. *See* Tr. at pp. 61-64; Mr. Randle's Direct Appeal Brief at pp. 4-9. Instead, the Petitioner's focus at trial concerned testimony regarding the lack of leg burns on the night of the alleged crime. *See* Tr. at pp. 62-63. And, as

11

promised, Mr. Hixson elicited the favorable testimony on cross-examination of a witness for the State. *See id.* at p. 242.

Mr. Randle has not identified any other witness that should have been called. *See id.* at pp. 61-64. Indeed, any such testimony by other witnesses would have been duplicative with the account already elicited on cross-examination. *See Griffin v. West*, 791 F.2d 1578, 1581 (10th Cir. 1986) (rejecting a petitioner's ineffective assistance claim based on a failure to call a witness whose testimony would have been cumulative). Outside the testimony concerning a lack of burns, Mr. Randle does not explain the nature of any other expected testimony,[3] by whom it was to be offered, or how it might have affected the outcome of the trial. As a result, Mr. Randle cannot show prejudice from the alleged errors. *See Cannon v. Mullin*, 383 F.3d 1152, 1165 (10th Cir. 2004) (rejecting a claim of ineffective assistance arising out of an alleged failure to call additional expert witnesses because the petitioner had failed to indicate "what helpful testimony would, or even could, have been elicited by any of the additional experts he suggests"), *cert. denied*, __ U.S. __, 125 S. Ct. 1664 (2005).

---

[3]     In the direct appeal, Mr. Randle referred to unidentified witnesses "that could have proven [his] defense concerning his mental instability." Mr. Randle's Direct Appeal Brief at pp. 5-6. This statement was never explained. In opening statement and closing argument, Mr. Randle's defense was based on mistaken identity rather than mental instability. Tr. at p. 159 (opening statement), pp. 301-304 (closing argument). Other than the single reference in Mr. Randle's appeal brief, the record is devoid of any information to suggest a viable defense based on mental instability.

C.   Ineffective Assistance for Failure to Object to the Alleged Discriminatory Peremptory Challenge

Mr. Randle also contends that his trial attorney had improperly failed to object to the prosecutor's peremptory challenge to exclude an African-American venireperson. Petition at p. 10; *see supra* p. 10.[4] But this claim lacks merit.

Mr. Hixson did not object when the prosecutor told the judge that he had anticipated a peremptory challenge to excuse the African-American veniremember. *See* Tr. at p. 57. But the trial court did not allow an objection. Instead, as soon as the prosecutor stated his intention, the judge stated: "I think we're required to have a [*Batson*] hearing." *Id.* In lieu of an objection, Mr. Hixson merely agreed with the judge that a *Batson* hearing was warranted. *Id.* At the hearing, the judge ultimately allowed the peremptory challenge, and the OCCA rejected Mr. Randle's theory on the merits rather than the lack of an objection. *See supra* pp. 7, 9. The Court should reject the claim of ineffectiveness because Mr. Randle cannot show a probable difference in the outcome if his attorney had objected at trial to the State's peremptory challenge. *See supra* pp. 6-10.

IV.   Prosecutorial Misconduct

Mr. Randle alleges the denial of a fair trial by the prosecutor's attempt to define "reasonable doubt." Petition at p. 8. On direct appeal, the OCCA concluded that "there was no prosecutorial misconduct as the prosecutor did not attempt to define reasonable doubt to

---

[4]     Mr. Randle refers to the omission as an example of the attorney's "conflict of interest." Petition at p. 10.

the jury." OCCA Opinion on Direct Appeal at p. 2.[5] This determination was not contrary

to, or an unreasonable application of, Supreme Court precedent.

A.  Standard for Assessment of a Habeas Claim Involving Prosecutorial
    Misconduct

In considering a habeas claim based on prosecutorial misconduct, the court must

determine whether a constitutional violation had taken place "which so infected the trial with

unfairness as to make the resulting conviction a denial of due process." *Fero v. Kerby*, 39

F.3d 1462, 1473 (10th Cir. 1994) (citation omitted). If a prosecutor has acted improperly,

"the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of

the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (citations omitted). In

conducting this inquiry, the Court should view the prosecutor's statements in context,

considering "whether the prosecutor's statements plausibly 'could have tipped the scales in

favor of the prosecution.'" *Fero v. Kerby*, 39 F.3d at 1474 (quoting *Hopkinson v. Shillinger*,

866 F.2d 1185 (10th Cir. 1989)).

---

[5]     On direct appeal, Mr. Randle invoked the due process clauses in the state and federal constitutions. Mr. Randle's Direct Appeal Brief at p. 12 (citing U.S. Const. amend. XIV & Okla. Const. art. 2 § 7). In rejecting the claims, the OCCA cited *Hammon v. State of Oklahoma*, 898 P.2d 1287 (Okla. Crim. App. 1995). OCCA Opinion on Direct Appeal at p. 2. *Hammon*, in turn, stated that the standard of review for a claim of prosecutorial misconduct was "whether the [challenged] remarks [could] be said to have influenced the verdict against the appellant." *Hammon v. State of Oklahoma*, 898 P.2d at 1305. Under similar circumstances, the Tenth Circuit Court of Appeals has held that the OCCA's treatment of a claim involving prosecutorial misconduct constituted an "adjudication on the merits" of both the federal and state due process claims. *See Wansing v. Hargett*, 341 F.3d 1207, 1210-12 (10th Cir.), *cert. denied*, 540 U.S. 1091 (2003). Thus, a deferential standard of review applies to Mr. Randle's federal claim involving prosecutorial misconduct. *See supra* pp. 5-6.

14

B.    Proof of Prosecutorial Misconduct

In his habeas petition, Mr. Randle complains that the prosecutor had improperly attempted to define "reasonable doubt" to the jury.  Petition at p. 8.  The claim should be rejected.

In the present action, Mr. Randle does not explain his allegations.  But on direct appeal, the Petitioner referred to comments made by the prosecutor to prospective jurors during *voir dire*.  Mr. Randle's Direct Appeal Brief at pp. 10-11.  The comments were:

> We are going to talk a lot probably about reasonable doubt.  Anybody ever heard that phrase before?  Anybody watch TV shows dealing with the law?  How many watch TV shows about the law?
>
> . . . .
>
> Okay.  You see lots of times in there where they have a criminal case, I mean there's certain things that are said about reasonable doubt?
>
> . . . .
>
> Have you ever heard the phrase beyond the shadow of a doubt?
>
> . . . .
>
> Okay.  Beyond all doubt?  Have you heard those phrases used?  You understand that what the State's burden in this case is is what's known as beyond a reasonable doubt.  Doesn't mean beyond a shadow of a doubt, doesn't mean beyond all doubt.  Just means beyond a reasonable doubt.
>
> . . . .
>
> We talked some about the elements in the case, that there's going to be certain elements that have to be proven in a case, have to be proven beyond a reasonable doubt.  I've talked a little bit about the proof is beyond a reasonable doubt, not beyond a shadow of a doubt or beyond all doubt.

. . . .

You understand that's the State's burden. It's not beyond all doubt or beyond a shadow of a doubt; it's beyond all reasonable doubt.

Tr. at pp. 28-29, 72, 109.

The OCCA addressed this claim and concluded that "there was no prosecutorial misconduct." OCCA Opinion on Direct Appeal at p. 2. This decision was reasonable and consistent with Supreme Court precedent.

In *Gordon v. Ward*, the Western District of Oklahoma and the Tenth Circuit Court of Appeals addressed similar circumstances and concluded that the challenged comments did not render the trial fundamentally unfair. *Gordon v. Ward*, Case No. CIV-03-1342-M, slip op. at 6-9 (W.D. Okla. May 20, 2004) (unpublished report and recommendation by magistrate judge), *adopted*, Order (W.D. Okla. June 14, 2004) (Miles-LaGrange, J.) (unpublished op.), *appeal dismissed*, 118 Fed. Appx. 434, 436 (10th Cir. Dec. 9, 2004) (unpublished op.). There the petitioner objected to the following comments made by the prosecutor during *voir dire*:

In terms of beyond a reasonable doubt, in Oklahoma the judge, the lawyers, nobody can define what beyond a reasonable doubt means. You have to decide that for yourself. Okay? I'll tell you what it doesn't mean. It doesn't mean - you may have heard on TV terms like beyond a shadow of a doubt or or beyond all doubt. Do you see that there's a difference between beyond a reasonable doubt and those phrases I've just talked about?

. . . .

16

> Do you understand that there's a difference between beyond a reasonable
> doubt and say beyond a reasonable doubt and beyond a shadow of a doubt and
> beyond all doubt, is there a difference to you between those particular phrases?

*Id.*, slip op. at 7 (citation omitted).  The OCCA concluded that the statements did not

constitute error.  *See id.* at p. 8.  In the report and recommendation, the magistrate judge

stated:

> The prosecutor's statements, whether right or wrong, did not infect the trial
> with unfairness nor could the statements plausibly have tipped the scales in
> favor of the prosecution or rendered Petitioner's trial fundamentally unfair.
> The OCCA's standard for reviewing the prosecutorial misconduct claim was
> not contrary to Supreme Court law, nor was its application objectively
> unreasonable in this case.  Petitioner is not entitled to relief on this ground.

*Id.*, slip op. at 9.  Judge Miles-LaGrange adopted the recommendation[6] and the Tenth Circuit

Court of Appeals dismissed the appeal, holding that the OCCA's disposition was not contrary

to or an unreasonable application of clearly established federal law.[7]

     *Gordon v. Ward* is persuasive in light of the similarity in facts.  *See* Tenth Cir. R.

36.3(B).  Judge Miles-LaGrange should conclude, as she did in *Gordon*, that the OCCA's

determination did not render the trial fundamentally unfair and reject the habeas claim on this

ground.

### Recommendation and Notice of Right to Object

     The Court should deny the Petitioner's requests for a stay and for a writ of habeas

corpus.

---

[6]     *Gordon v. Ward*, Case No. CIV-03-1342-M (W.D. Okla. June 14, 2004) (unpublished op.).

[7]     *Gordon v. Ward*, 118 Fed. Appx. 434, 436 (10th Cir. Dec. 9, 2004) (unpublished op.).

The Petitioner can object to this report and recommendation. *See* 28 U.S.C. § 636(b)(1) (2000). To do so, Mr. Randle must file an objection with the Clerk of this Court. The deadline for objections is June 30, 2005. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

### Status of the Referral

The referral to the undersigned is terminated.

Entered this 10th day of June, 2005.

Robert E. Bacharach
United States Magistrate Judge